IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE BAR PLAN MUTUAL INSURANCE
COMPANY,

    Plaintiff,

    vs.                                 Case No. 17-1037-JTM

CHRISTOPHER W. O'BRIEN, *et al.*,

    Defendants.

## MEMORANDUM AND ORDER

In 2015, plaintiff The Bar Plan (TBP) issued a legal malpractice insurance policy to the defendant Brown, Dengler, & O'Brien (BDO). In 2016, the bankruptcy trustee representing the former clients of Christopher O'Brien, one of the attorneys named as an insured in the BDO policy, commenced an action against O'Brien and BDO. *J. Michael Morris, Trustee v. O'Brien*, No. 16-5163 (Bankr. Kan.). TBP subsequently commenced this declaratory judgment action seeking a determination of its obligations under the policy.

In *Morris v. O'Brien*, the Trustee alleges that O'Brien was the attorney for Roger and Marcia Altis, that he placed proceeds from the sale of their business, RCCA Well Service, into the BDO trust account, and then withdrew them for his personal use or benefit. The Trustee advances claims of conversion, fraud, and breach of fiduciary duty against O'Brien. He also seeks recovery against BDO, first under a respondeat respondeat superior theory,

alleging that O'Brien was acting as the firm's agent, and second for negligent supervision of the BDO trust account.

TBP has undertaken the defense of BDO in the bankruptcy action under a reservation of rights. It contends that BDO is not covered under the policy under two provisions. Under Exclusion A, the policy excludes coverage for "[a]ny dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful acts or omissions by an Insured." The Exclusion does not apply if an insured was unaware of the fraud, but this limitation is inapplicable "to the extent that the act or omission underlying the Claim for Damages does not relate to or arise out of the defalcation by any Insured." Second, Exclusion L bars claims "against an Insured who before the Policy effective date knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that Claim."

The matter is currently before the court on defendant BDO's motion to dismiss or stay the declaratory judgment action. BDO argues the court should abstain from hearing TBP's declaratory judgment action. According to BDO, the existence of coverage depends on issues of fact which will be resolved in *Morris v. O'Brien*.

Where an independent parallel action is pending, a district court enjoys broad discretion to decline to exercise jurisdiction under the Declaratory Judgment Act. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942). Such abstention serves both "considerations of practicality and wise judicial administration," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995), and avoids "[g]ratuitous interference" with state proceedings.

*Brillhart*, 316 U.S. at 495.

In deciding whether to dismiss a declaratory judgment action, the district court should consider:
> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994) (quotations omitted).

TBP correctly points out that the cases cited by BDO all involve abstention premised on the existence of parallel state litigation. *See Brillhart*, 316 U.S. at 495, *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002), *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994). In the present case, there is no parallel state litigation. *Morris v. O'Brien* is an adversarial bankruptcy proceeding.

However, while the existence of state litigation may be an important factor supporting a decision to decline jurisdiction under the Declaratory Judgment Act, the court does not view it as fatal to defendant's motion.[1] Any exercise of jurisdiction under the Act is discretionary. *See Public Affairs Press v. Rickover*, 369 U.S. 111, 112 (1962) ("The

---

[1] This court has noted authority indicating that a district court retains the discretion to decline jurisdiction even in the absence of an actual parallel state proceeding. *Bd. of Cty. Comm'rs. of Cty. of Marshall v. Cont'l W. Ins. Co.*, 184 F. Supp. 2d 1117, 1121 (D. Kan. 2001). However, it is notable that in the cited case, *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir.1998), the court stressed that while there was no state litigation at that time, "the district court [had] found it inevitable that Ind-Com would eventually file a state action."

Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."); *Green v. Mansour*, 474 U.S. 64, 72 (1985) (Declaratory Judgment Act "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant").

Nevertheless, the court finds in its discretion that the present matter should not be dismissed. First, even if the absence of state litigation is not in itself fatal to BDO's motion, it is clear that the federalism concerns typically present in *Brillhart* abstention cases is not present here. Thus, an exercise of jurisdiction would not serve to "increase the friction" between federal and state courts. Nor is there any indication that TBP has filed the present action as "procedural fencing," or in any manner other than as a bona fide attempt to obtain a resolution of the scope of coverage under the policy.

The nature and extent of the policy language is the central issue in the present case, and may be effectively resolved by the present declaratory action. While the adversarial bankruptcy proceeding may touch on some of the issues in the present case, each case addresses issues and are tied factual questions which are not identical. The present case may effectively resolve the controversy over TBP's duty to defend the *Morris* action.

In its Reply, BDO argues that the exclusion to the waiver to Exclusion A is inapplicable, since "there is no claim against BDO for a 'dishonest, deliberately fraudulent, criminal, malicious, or deliberately wrongful act.'" (Dkt. 19, at 6). Thus, it reasons, "[b]ecause the exclusion set forth in the first sentence of Exclusion A. does not apply, it is not necessary to determine whether the exception to the exclusion applies." (*Id.*)

But this reads Exclusion A too narrowly. Exclusion A broadly provides that

> THIS POLICY DOES NOT PROVIDE COVERAGE FOR **ANY CLAIM** BASED UPON OR ARISING OUT OF …
>
> **Any dishonest**, deliberately fraudulent, criminal, malicious or deliberately wrongful acts or omissions by **an Insured**; however, the Company will provide a defense for any Claim alleging such acts or omissions by an Insured acting in a professional capacity providing Legal Services, subject to Section II. COVERAGE, Paragraph B. 3., but the Company will not pay any sums the Insured shall become legally obligated to pay as Damages for any such Claim. This exclusion is waived with respect to **each Insured** who did not know of, or participate or acquiesce in, the act or omission, but then only to the extent that the act or omission underlying the Claim for Damages does not relate to or arise out of the defalcation by **any Insured** under this Policy of money or property maintained by the Policyholder or any Insured in trust, escrow, or other safekeeping for the account or benefit of any claimant or other party.

(Dkt. 1-1, at 18) (emphasis added).

The first sentence of the exclusion explicitly bars "any claim" which "arises out" of fraud or other intentional misconduct by "an Insured" (such as O'Brien), regardless of which Insured the claim may be advanced against.[2] The second sentence of the Exclusion is equally clear: there is no coverage as to "each Insured" if there is a defalcation by "any Insured."

More importantly, whatever the ultimate construction that may be given to Exclusion A, nothing in BDO's Reply indicates the existence of any *factual* issue with

---

[2] The Policy lists BDO and its individual members, including Christopher W. O'Brien, as "Insureds." (*Id.*, at 2). There is no argument that the embezzlement alleged by the Trustee in *Morris* would not constitute defalcation under Kansas law. *See In re Lunt*, 255 Kan. 529, 533, 874 P.2d 1198 (1994) (defalcation is "'misappropriation of trust funds or money held in any fiduciary capacity, and failure to properly account for such funds'") (quoting Black's Law Dictionary (6th Ed. 1990).)

respect to its application. To the contrary, the Reply only advances a purely legal argument against application of the exclusion. Accordingly, there is no reason to delay addressing the issue to await discovery in the bankruptcy action.[3]

With respect to Exclusion L, BDO does present several hyptothetical factual questions that may affect its application. BDO asks: "was defendant O'Brien an agent of defendant BDO, how did defendant BDO supervise the BDO trust account, did defendant BDO fail to use reasonable care in supervising the trust account and defendant O'Brien, and when did defendant BDO learn of the alleged defalcation of client funds?" (Dkt. 16, at 4).

However, BDO does not effectively respond to the argument made by TBP that the bankrutpcy action might not necessarily decide the factual issues raised by Exclusion L. The bankruptcy action may be resolved on the Trustee's theory of respondeat superior, or

---

[3] In a footnote to its Reply, BDO also argues that a duty to defend may arise under another part of the policy, "IV. INNOCENT INSURED PROVISION." (Reply, at 6. n. 7). BDO did not raise the existence of this provision in its original memorandum (Dkt. 16), and TBP did not address it in its response. The court cannot award defendants relief on the basis of an argument advanced for the first time in its reply. Moreover, the"Innocent Insured Provision" serves to merely excuse the reporting requirements of Section VII. CLAIMS, Paragraph A and Section II. COVERAGE, Paragraph C. It does not otherwise limit the explicit bar for claims for defalcation under Exclusion A. *See CAMICO Mut. Ins. Co. v. Jackson CPA Firm*, No. 2:15-CV-1823-PMD, 2016 WL 7403959, at *13 (D.S.C. Dec. 22, 2016) (finding innocent-insured provision was effective "only if an insured loses coverage *because of* a failure to follow certain claim reporting requirements"); *O'Quinn v. National Union Fire Ins.*, 2014 WL 12596559 n. 19 (S.D. Tex. July 17, 2014) (court did not need to address law firm's argument as to innocent insured provision, since coverage was precluded on other grounds); *Bryan Bros. v. Continental Casualty*, 704 F.Supp.2d 537, 549 (E.D. Va. 2010) (innocent-insured provision was not applicable where insurer had independent grounds for denying coverage). In any event, as with the argument regarding Exclusion A, BDO fails to demonstrate the existence of any factual issue surrounding the provision, such that the court should delay this declaratory judgment action during discovery in *Morris v. O'Brien.*

it may be resolved on the theory of negligent supervision. In either case, the bankruptcy action may not resolve the critical question regarding when, for purposes of Exclusion L, BDO may have become aware of a potential for a claim on the policy.

The court accordingly denies the motion to dismiss, and will further deny BDO's request to stay the present action. The court has discretion to stay an action during the pendency of another proceeding, based upon a determination of (1) whether a party is likely to prevail in the related proceeding; (2) whether the party will suffer irreparable harm in the absence of a stay, (3) whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and (4) the public interests at stake. *See United Steelworkers of America v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003).

The defendant has failed to show a stay is warranted. There has been no showing that BDO is likely to succeed in the bankruptcy action, and TBP has a valid interest in the expeditious resolution of its obligations under the policy. *See Mhoon*, 31 F.3d at 984 ("there is a substantial interest in deciding these issues without undue delay, particularly the question of the duty to defend"). In contrast, BDO has failed to show the need for a stay. It contends that discovery in the present action may be prejudicial, "because defendant BDO may be required to disclose factual information in this case that could be used against it in the underlying litigation." (Dkt. 16, at 6). But BDO does not explain, beyond this simple assertion of a hypothetical, what that factual information might be, or why the same information would not otherwise be discovered in the bankruptcy action.

IT IS ACCORDINGLY ORDERED this 3rd day of May, 2017, that the defendant's Motion to Dismiss or Stay (Dkt. 15) is hereby denied.

    s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE